CURTIS L. SCOVILLE AND BARBARA J. SCOVILLE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scoville v. Commissioner
Docket No. 14941-87.
United States Tax Court
T.C. Memo 1995-376; 1995 Tax Ct. Memo LEXIS 374; 70 T.C.M. (CCH) 346; August 8, 1995, Filed *374 Decision will be entered for respondent. Benjamin W. Gale, for petitioners. James D. Hill, for respondent. PAJAK, Special Trial Judge PAJAK
MEMORANDUM OPINION PAJAK, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined deficiencies, additions to tax, and increased interest in petitioners' Federal income taxes as follows: 1978
1979
1981
1982
Deficiency
$ 6,421.00
$ 3,582.00
$ 15,492.00
$ 2,451.00
Additions to Tax:
Sec. 6653(a)
321.05
179.10
--  --  Sec. 6653(a)(1)
--  --  774.60
122.55
Sec. 6653(a)(2)
--  --  [1]   [1]   Sec. 6659
1,926.30
1,074.30
3,795.60
-- Increased Interest:
Sec. 6621(c)
[2]   [2]   [2]   [2]   *375 Petitioners conceded the deficiencies. The Court must decide: (1) Whether petitioners are liable for the additions to tax for negligence under section 6653(a) for 1978 and 1979 and under section 6653(a)(1) and (2) for 1981 and 1982; (2) whether petitioners are liable for an addition to tax for a valuation overstatement under section 6659 for 1978, 1979, and 1981; and (3) whether petitioners are liable for increased interest under section 6621(c) for 1978, 1979, 1981, and 1982. Some of the facts in the case have been stipulated and are so found. Petitioners resided in Walnut Creek, California, at the time they filed their petition. This case pertains to petitioners' 1981 "investment" in a master recording that was promoted by Structured Shelters, Inc. The specific features of the master recording investment plan and the assets petitioners believed they were investing in are described in detail in , a consolidated test case. In , this Court disallowed all credits and deductions related to the master recordings, and found that the plan was *376 a sham without economic substance. Furthermore, this Court has repeatedly decided that participants in the master recording transactions similar to the one in which petitioners participated are subject to the additions to tax and additional interest as determined by respondent in this case. E.g., ; . Petitioners are well-educated individuals. Petitioner Curtis L. Scoville (petitioner) received a bachelor's degree in physics from Ohio State University in 1950, a master's degree in physics from Ohio State University in 1951, and a master's degree in business administration (M.B.A.) from the University of Kansas (U.K.) in 1977. Petitioner Barbara J. Scoville has a bachelor's degree in professional arts and attended graduate school in editorial art. Petitioner also has significant business experience. After his retirement from the Air Force, petitioner worked for General Electric in 1970 until he went to McDonnell Douglas in 1972 as a program manager on the space shuttle. From 1972 to 1975, he raised cattle, grain, hay and alfalfa on a farm petitioners *377 purchased in 1971. Petitioner then went to the U.K. and earned his M.B.A. For 2 years after he received his M.B.A., petitioner ran a consulting firm that employed several U.K. professors and petitioner. From 1979 through the middle of 1980, he was a marketing manager for King Radio, a manufacturer of communications and navigation equipment for general aviation airplanes. In the middle of 1980, petitioner went to work for another electronics firm, Systron Donner, in Concord, California, as a program manager. After their move to California, petitioners retained Harold Coffin, C.P.A., in early 1981 to prepare their 1980 Federal income taxes. Petitioner looked in the yellow pages of the telephone book and found that Mr. Coffin's office was relatively close to his office. Based on the telephone book listing, the proximity to his office and the C.P.A. degree hanging on Mr. Coffin's wall, petitioner retained Mr. Coffin. Petitioner did not interview any other prospective accountants. In approximately November 1981, Mr. Coffin contacted petitioner by telephone with regard to an "interesting investment" in the Children's Classics masters recording program. About that time, petitioners met *378 with Mr. Coffin for an hour or so to discuss the master recording program. Petitioners again met with Mr. Coffin on December 30, 1981, for 2 or 3 hours at which time they signed the closing documents for the Children's Classics master recording program. Petitioner claimed that he did not know that Mr. Coffin was a sales representative for Structured Shelters, Inc. Petitioner asserted that Mr. Coffin was investigating investments for petitioners so that they would return to Mr. Coffin to get their taxes prepared the next year. The only fee petitioners paid Mr. Coffin in 1981 was for tax preparation. Petitioners invested $ 12,500 in a master recording for which they purportedly would receive a $ 25,000 investment tax credit. Petitioner had some prior experience with and knowledge about the investment tax credit. He questioned Mr. Coffin several times regarding whether they could invest $ 12,500 and get a credit of $ 25,000. Petitioner never sought the advice or opinion of a tax practitioner other than Mr. Coffin. The investment tax credit was based upon a lease of a master recording purportedly valued at $ 250,000. Petitioner admitted that from an economic standpoint it did not make *379 sense to him that he could lease an asset worth $ 250,000 for 8 years for $ 10,000 ($ 2,500 of petitioners' investment was for a distribution agreement). Even so, petitioner did not consult with an expert in the music industry to confirm that the asset was really worth $ 250,000. Petitioners signed the closing documents on December 30, 1981. The closing documents clearly identified Mr. Coffin as a "Chartered Representative" of Structured Shelters, Inc. The closing documents included a promissory note, a trust beneficiary notice, a purchaser's acceptance and signed statement, a management agreement, a declaration of trust, an equipment lease, an investment tax credit lessor's election statement, and an employment agreement. Petitioners admit that many of these documents were not signed by their agents or the representatives of Structured Shelters, Inc. until after December 31, 1981, at which time many documents were backdated. Respondent determined that petitioners are liable for additions to tax under section 6653(a) for 1978 and 1979 and under section 6653(a)(1) and (2) for 1981 and 1982. Sections 6653(a) and 6653(a)(1) provide for an addition to tax of an amount equal to 5 percent *380 of the underpayment if any part of the underpayment is due to negligence or disregard of rules or regulations. Section 6653(a)(2) provides for an addition to tax in the amount of 50 percent of the interest payable on the portion of any underpayment of tax which is attributable to negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioners have the burden of proof to show that any underpayment was not due to negligence. Rule 142(a); . Petitioners argue that they were not negligent because they relied upon the advice of Mr. Coffin. The record clearly demonstrates that petitioners' reliance solely upon Mr. Coffin was not prudent or reasonable. Petitioner stated that he questioned Mr. Coffin several times about the investment tax credit. Petitioner also admitted that the lease did not make sense from an economic standpoint. We believe that petitioner's background, experience, and education, which includes an M.B.A., should have alerted *381 him that there were "sufficient gremlins that would have required a reasonably prudent person to step back and take another look." , affd. , affd. . Petitioner's background, experience, and education clearly distinguish this case from , revg. , a case upon which petitioners rely. Furthermore, we find it difficult to believe that petitioners failed to notice that Mr. Coffin was a "Chartered Representative" for Structured Shelters, Inc. because it was clearly listed on the closing documents. Also, it was unreasonable for petitioners to believe that Mr. Coffin would spend several hours investigating investments for them and meeting with them without compensation. Accordingly, we sustain respondent's determination as to the additions to tax for negligence for each year. , affd. without published *382 opinion . Respondent determined that petitioners are liable for a valuation overstatement addition to tax under section 6659 for 1978, 1979, and 1981. Section 6659 imposes a graduated addition to tax on individuals whose underpayment of tax is attributable to a valuation overstatement and is equal to or exceeds $ 1,000. Sec. 6659(a), (d). A valuation overstatement arises on any return where the value of the property claimed on the return is 150 percent or more of the amount determined to be the correct amount of such valuation. Sec. 6659(c)(1). If the valuation claimed exceeds 250 percent of the correct valuation, the addition to tax is equal to 30 percent of the underpayment. Sec. 6659(b); . Section 6659 does not apply to an underpayment of tax which is "not attributable to" a valuation overstatement. ; , affg. ; , *383 affd. . In , the taxpayers invested in FoodSource containers. We found that a bona fide sale had occurred and that the investment credits and depreciation deductions were properly disallowed by respondent because the property in question had not been placed in service. Similarly, in , the parties stipulated that the FoodSource container had not been placed in service. The Court of Appeals for the Ninth Circuit, in , observed that "the overvaluation became irrelevant because the containers were not placed in service during the relevant tax years. That was the reason for assessing the deficiency, not the separable problem of overvaluation." [Citations omitted.] In her notice of deficiency, respondent disallowed petitioners' master recording deductions and credits because, among other reasons, the transaction lacked economic substance. Where there is a lack of economic substance, *384 the proper basis in the property is zero, and any basis claimed by the taxpayer is an overvaluation. When an underpayment stems from disallowed depreciation deductions or investment credits due to lack of economic substance, the deficiency is attributable to an overstatement of value, and section 6659 is applicable. ; ; In the instant case, the petitioners do not contest the deficiencies that were due to the disallowance of all deductions and investment tax credits petitioners had claimed in connection with the master recording investment. Petitioners stipulated before trial that they were not entitled to any deductions or credits for that investment. However, petitioners, for the first time, contended in their trial memorandum that the master recording was not placed in service in 1981, and therefore section 6659 does not apply because the underpayment is not attributable to a valuation overstatement. *385 On brief, petitioners rely on this Court's opinion in , in addition to , and , to support their contention. In , this Court found the taxpayers were not liable for the section 6659 addition to tax when, prior to the trial of the case, the taxpayers conceded that they were not entitled to the investment tax credit because the agreement in question was a license, not a lease. Therefore, the underpayment was attributable to something other than a valuation overstatement. Concession of the investment tax credit in and of itself does not relieve taxpayers of liability for the section 6659 addition to tax. . Instead, what is significant is the ground upon which the investment tax credit is disallowed or conceded. At trial, petitioner testified that he did not listen to the master recording because *386 it was "not available". We find the record to be inconclusive with respect to when the master recording was placed in service. Moreover, unlike the transactions in , and , the master recording investment plan in the instant case was a sham, devoid of economic substance. Consequently, we find petitioners' transactions to be similar to those described in In other words, "When the valuation overstatements are integral to and inseparable from a finding that the deductions and credits are disallowed, then the addition to tax is applicable." We therefore conclude that the deficiency caused by the disallowance of the investment credits was attributable to the overvaluation of the master recording, and hold that petitioners are liable for the section 6659 valuation overstatement addition to tax as determined by respondent. Respondent also determined that petitioners are liable for increased interest under section 6621(c) for 1978, 1979, *387 1981, and 1982. Tax motivated transactions include any valuation overstatement and any sham transaction. Sec. 6621(c)(3)(A)(i) and (v). Transactions that lack economic substance or business purpose are sham transactions under section 6621(c)(3)(A)(v). . Because the transaction in this case involves both a valuation overstatement and a sham transaction, we hold that petitioners are liable for the increased interest under section 6621(c) for 1978, 1979, 1981, and 1982. Decision will be entered for respondent. Footnotes
1. 50 percent of the interest due on the deficiency, which is the portion of the underpayment attributable to negligence.↩
2. 120 percent of the interest accruing after December 31, 1984, on the entire underpayment which is attributable to a tax-motivated transaction. (Section 6621(c) originally was section 6621(d)).↩